# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL CLARK,** | ) |
| Plaintiff, | ) |
| | ) Case No. 1:22-cv-01089 |
| v. | ) |
| | ) **(Removed from the Chester County Circuit Court, Case No. 22-CV-11)** |
| **LIBERTY MUTUAL INSURANCE COMPANY,** | ) |
| Defendant. | ) |

## DEFENDANT'S POST-CONTEMPT HEARING REPLY BRIEF

Pursuant to this Court's Order (D.E. 58) and three (3) days of contempt hearings occurring between April 10 and May 1, 2023 ("the Hearings"), and receipt of Plaintiff's belated Response (D.E. 63), Defendant Ohio Security Insurance Company, improperly named in the Complaint as Liberty Mutual Insurance Company ("Ohio Security"), files its Reply Brief[1] and states as follows:

## I. INTRODUCTION

One can ascribe many faults to Ohio Security's opponents in this lawsuit, but Plaintiff and P&G cannot be accused of inconsistency. Indeed, they have consistently missed every (a) deadline this Court has set before them and (b) opportunity to explain why they failed to produce information as ordered by the Court and without their post-lawsuit digital revisions. The Response, which attempts to address the myriad issues created by their contumacious conduct in five pages, is more of the same: respond late, withhold information, and take no responsibility. The Response does not imperil Ohio Security's initial positions (D.E. 62) and should be ignored.

---

[1] While Ohio Security understands its Reply Brief is due within seven days of the Response (D.E. 58), it is unsure of the maximal length. Counsel understands the 25-page maximum applied to Ohio Security's initial brief, not the Reply. Given the number of facts at issue and the potential dispositive nature of the Hearings, Ohio Security limits its Reply to seven pages or less in accordance with LR 56.1(c), as opposed to the 10-page limit set forth in LR 12.1.

## II. ADDRESSING PLAINTIFF AND P&G'S ARGUMENTS

### A. NO "GOOD CAUSE" SHOWN TO SUPPORT LATE FILING OF RESPONSE

Boldly, Plaintiff and PG filed their Response 11 days late and offer no explanation for the delay. As a result, Plaintiff and PG have not provided the Court with anything that would allow it to find "good cause"[2] exists for their belated Response, and it should be ignored and/or stricken.

### B. PLAINTIFF AND P&G DID NOT RESPOND TO SOME ARGUMENTS

Most notably, neither Plaintiff nor P&G address Ohio Security's arguments that P&G failed to (a) produce all "electronic devices possessed by P&G[] or Mr. [] Griffin for inspection by a digital forensics examiner (D.E. 26-1 &45) and (b) have a digital forensics examiner complete the ordered digital forensic analysis of such "devices". (D.E. 45.) Instead and confusingly, they assert Ohio Security's presentation of Mr. Struttman's testimony (who was admitted to testify as a digital forensics expert), as opposed to employees of defense counsel's firm's IT department, regarding the changes made to the Second Alleged AoC prior to its production in response to the Subpoena somehow exonerates P&G from its contumacious conduct. Surely, admitted Rule 702 expert testimony is preferable to witness testimony from a defendant's firm.

The admitted expert testimony proves P&G materially changed the Second Alleged AoC in several respects prior to its production in January 2023. Moreover, admitted proof at the Hearings prove P&G (a) withheld court-ordered information from production and (b) Mr. Griffin made at least one change to the small bit of data P&G produced thus far. P&G's actions were "willful and in bad faith" and P&G has not met its burden to prove otherwise. *See Ocean Innovations v. Quarterbeth, Inc.,* 2011 WL 1467371, *7 (N.D. Ohio Apr. 18, 2011). Micro

---

[2] The Scheduling Order sets forth that deadlines will not be modified or extended absent "good cause shown." (D.E. 13); *see also* Fed. R. Civ. P. 6(b)(1)(B).

Computer Systems' (visual-only) inspection of electronic files to determine whether such files were digitally signed is so far removed from what the Court ordered, it is difficult to comprehend and certainly cannot satisfy P&G's burden. P&G's conduct should be sanctioned.

Finally, to the extent the Court credits P&G's argument that Mr. Struttman did not show when or by whom the digital signature was added to the Second Alleged AoC, such failure is due to P&G's continued violations of Court orders. P&G cannot be allowed to use its sanctionable withholding of information to insulate it from adverse findings.

**C.     MR. CLARK'S CLAIMS SHOULD BE DISMISSED**

Plaintiff cites to two (2) cases to argue that Plaintiff, Mr. Clark, has standing to bring his claims. Neither case provides any assistance to Plaintiff in this regard; in fact, the cases only bring into focus yet another reason why Mr. Clark's claims are due to be dismissed.

To begin, Ohio Security addresses *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016). In *Cranpark*, the Sixth Circuit delved into the differences between Article III standing and Fed. R. Civ. P. 17's "real-party-in-interest requirement," which the Sixth Circuit clarified to mean "…the real party in interest is the person who is entitled to enforce the right asserted under the governing substantive law." *Id.* at 730 (citing *Certain Interested Underwriters at Lloyd's, London, Eng. v. Layne,* 26 F.3d 39, 42–43 (6th Cir. 1994)). Indeed, the *Cranpark* Court noted "… there is a degree of confusion in drawing a line between Article III standing and the real-party-in-interest requirement. Lawyers, and courts, often fail to distinguish between these two distinct issues." *Id.* at 732.

The *Cranpark* Court noted that while "Article III standing is plaintiff's burden to prove and can be raised at any point", Rule 17 "real-party-in-interest" challenges "[w]hen raised late in litigation … are generally considered waived or forfeited." *Id.* at 730. The *Cranpark* Court

determined that "one who sells his interest in a cause of action is not deprived of Article III standing, but he is susceptible to a real-party in interest challenge, at least if the challenge is timely raised." *Id.* The *Cranpark* Court further noted that in a diversity case, a Rule 17 analysis turns on whether the plaintiff may maintain the action under applicable state law. *Id.* at 731.

Applying the ruling in *Cranpark*, it is clearly Mr. Clark's burden to show he has standing. Mr. Clark cannot meet this burden. At the Hearings, Mr. Clark agreed that he has no interest in the outcome of this lawsuit, as he no longer owned the Property, he pledged the proceeds of the Lawsuit to P&G (and also to the new owner of the Property, Mr. Heath, as well), and this was all "up to [Mr. Griffin]". (D.E. 60 at 17:4-10; 20:3-5; 28:18 – 30:20; 32:15-33:20; 35:9-15; Ex. 9.)

In the alternative, in the event the Court determines that this matter involves an issue of "real-party-in-interest" under Rule 17, Ohio Security (a) timely raised the challenge and (b) has provided the Court with applicable Tennessee substantive law supporting a finding that Mr. Clark is not the real-party-in-interest. Regarding the former (timely raising the challenge), Ohio Security has long maintained it did not learn of the alleged assignment of claim until months after it had filed it Answer on May 13, 2022. (D.E. 8.) Upon learning of the potential assignment, Ohio Security, on September 28, 2022, promptly raised the question of whether Mr. Clark was "the real party in interest" in its Motion for Sanctions, and then devoted considerable space to a "real-party-in-interest" argument in its initial Brief. (D.E. 19 & 62.) Indeed, Exhibit 16[3] which was entered into evidence by P&G at the Hearings is materially different from the proof entered by Ohio Security in this matter (D.E. 19-1, at ¶ 27) and Mr. Clark's first counsel, Toby Gammill. (*Id.* at ¶

---

[3] In this regard, Ohio Security's claim file (which was never requested by Plaintiff, as no discovery was ever served by Plaintiff) also contains a November 23, 2020 email from Louis Ugalde, Jr. to William Griffin. *See* 1-page email dated November 23, 2020 attached hereto as **Exhibit 1**. Notably, Ohio Security's version of such email is materially different from that produced by P&G in response to the Subpoena and introduced at the Hearings as Exhibit 16 – in Ohio Security's version, Mr. Ugalde, Jr. does not write "Thank you for submitting the assignment of benefits."

18, D.E. 19-14.) Moreover, due to P&G and Plaintiff's refusals to produce information that would allow Ohio Security to complete discovery into whether Plaintiff truly is the "real-party-in-interest", Plaintiff should not be allowed to use such delays to complain about the timeliness or formalization of Ohio Security's objections.

Regarding the second prong, Tennessee's applicable substantive case law concerning whether one is the real-party-in-interest is best set forth in *N. Am. Specialty Ins. Co. v. Heritage Glass, LLC*, No. 2:16-CV-263, 2019 WL 4045768, at *4 (E.D. Tenn. Aug. 27, 2019), which was affirmed by the Sixth Circuit (after *Cranpark* was decided), 821 F. App'x 494 (6th Cir. 2020), and sets forth Tennessee's applicable substantive law in this regard as follows:

> …[T]he general rule is that valid contracts are assignable, and absent some supervening legal policy, the transfer of a contractual right is effective. Once a valid assignment is completed, the assignor retains no rights under the original contract; the assignee then stands in the position of the assignor, possessing the same rights and being subject to the same defenses.

*Id.* at *4 (internal citations omitted). Although the First and Second Alleged AoCs contain some differences, the scope of the release is identical: Plaintiff and P&G agree it is a full, not a partial, assignment of claim. (D.E. 60 at 17:4-10; 20:3-5; 28:18-25; 116:10-117:2; 118:15-25, Ex. 10.) Thus, Tennessee substantive law supports a finding that Mr. Clark is not the real-party-in-interest in this lawsuit, as he is not "entitled to enforce the right asserted" (indeed, he admits the same). *Cranpark*, 821 F.3d at 730. (D.E. 60 at 17:4-10; 20:3-5; 28:18 – 30:20; 32:15-33:20; 35:9-15; Ex. 9; Hearings Ex. 1, 3, 10, 13.) Instead, P&G has that right, and it is not a party to this action.

*Ginney Motel, Inc. v. Certain Underwriters at Lloyd's, London* is even less helpful to Plaintiff. In that case Judge Anderson dismissed the insured's untimely lawsuit and held the Court "need not make a final determination of whether [the alleged assignee] has the standing of capacity to sue." No. 119CV01243STAJAY, 2020 WL 7327321, at *3-6 (W.D. Tenn. Dec. 11, 2020).

Similar to this case, the insured, *Ginney Motel*, late-produced an assignment of claim (only when responding to the insurer's motion for summary judgment), but the alleged assignee, Affordable Construction, was actually named as a party-plaintiff in that action. *Id.* at *1. Unlike this case, the *Ginney Motel* defendant-insurer challenged whether the alleged named-plaintiff assignee, Affordable Construction, had capacity to sue (which Judge Anderson noted is "distinct from standing"), because it disputed whether a proper assignment had occurred. *Id.* at *3. In *Ginney Motel*, there was no mention of the defendant insurer's waiver of the standing argument whatsoever; instead, the Court determined the claims of both plaintiffs, regardless of which was the true party in interest, were time-barred.

In conclusion, as noted in *Cranpark*, the distinctions between Article III standing and Rule 17's real-party-in-interest can be "confusi[ng]", but under either paradigm, Mr. Clark's claims should be dismissed. Mr. Clark has the burden of showing he has standing to sue; Plaintiff has not and cannot meet his burden. To the extent this involves a Rule 17 real-party-in-interest analysis, then (a) Ohio Security timely objected in this regard and (b) applicable Tennessee substantive case law supports a finding that Mr. Clark no longer has an interest in the outcome of this lawsuit. Either way, Plaintiff's claims against Ohio Security should be dismissed *with* prejudice.[4]

---

[4] Just four (4) days ago, in *BC North Partners v. Penn National Mut. Cas. Ins. Co.*, No 1:22-cv-1134 (W.D. Tenn. June 22, 2023), this Court noted that Fed. R. Civ. P. 37(b)(2)(A) authorizes a district court to sanction a party for its failure to comply with a court order directing the party to provide or permit discovery, up to and including dismissal. District "courts weigh the following four (4) factors to determine 'whether dismissal is an appropriate sanction for failure to comply with a discovery obligation or other court order:

    (1) whether the party's failure is due to willfulness, bad faith, or fault;
    (2) whether the adversary was prejudiced by the dismissed party's conduct;
    (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and
    (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'

*Id.* (citing *Mager v. Wisc. Cent. Ltd.*, 924 F.3d 831, 837 (6th Cir. 2019)). Dismissal is warranted for a record of delay or "contumacious conduct," meaning "behavior that is perverse in resisting authority and stubbornly disobedient." *Id*.
    However, unlike *BC North*, where this Court transformed a recommended dismissal with prejudice to a dismissal without prejudice where the "[p]laintiff was not clearly warned that its failure to provide its initial disclosures

## V. CONCLUSION

As a result of the foregoing, Ohio Security respectfully requests the Court (1) dismiss Mr. Clark's claims in this lawsuit *with prejudice*; (2) find P&G and William Griffin in contempt of Court; (3) find (a) the Second Alleged AoC was forged by William Griffin and (b) both William Griffin and P&G knowingly produced such forged document in response to the Subpoena; (4) find P&G may not maintain a claim (now or in the future) against Ohio Security related to this dispute due to its sanctionable conduct; (5) (in the event this lawsuit is not dismissed in its entirety) rule that P&G and William Griffin may not testify in this dispute as experts or provide testimony regarding the value or causes of the loss at issue, and (6) order P&G and William Griffin to pay Ohio Security's attorneys' fees and costs incurred since August 26, 2022. In the event the Court does not find the Second Alleged AoC was forged by William Griffin and that P&G knowingly produced such forged document in response to the Subpoena, Ohio Security alternatively requests that it be granted the relief discussed in Section IV 5. of its original brief .(D.E. 62.)

Respectfully submitted,

*/s/Brian C. Neal*
Brian C. Neal (BPR #022532)
Kate A. Hamilton (BPR #039331)
BURR & FORMAN LLP
222 Second Ave. South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3246
Facsimile: (615) 724-3346

*Attorneys for Defendant Ohio Security Insurance Company, improperly named in the Complaint as Liberty Mutual Insurance Company*

---

could lead to dismissal of the action," there is no such concern here. Plaintiff and P&G were repeatedly warned that dismissal was possible at hearings, and were given three days of Hearings to explain themselves or comply.

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 26th day of June 2023, a true and correct copy of the foregoing has been served via the Court's CM/ECF System on the following:

    Drayton D. Berkley
    Berkley Law Firm, PLLC
    1255 Lynnfield, Suite 226
    Memphis, TN  38119
    attorneyberkley@gmail.com

            */s/Brian C. Neal*