IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

MICHAEL CLARK,

    Plaintiff,

v.                                         Case No.: 1:22-cv-01089-JDB-jay

LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendant.

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion for Sanctions. ECF No. 19. Plaintiff has responded in opposition. This matter was referred to the Magistrate Judge for determination and/or report and recommendation on October 3, 2022. ECF No. 20. After a series of contempt hearings and a thorough review of the briefing on this matter, the Magistrate Judge recommends a finding that this case be dismissed, as Plaintiff is not the real party in interest, and Plaintiff has failed to meet the reasonable time requirement of Rule 17 in substituting the real party in interest, assignee P&G, to which Plaintiff admits he completely assigned his claims in October 2020. Moreover, Plaintiff and P&G have engaged in gamesmanship and delay tactics throughout this litigation such that the Magistrate Judge recommends a finding that allowing Plaintiff to cure under Rule 17 would not be appropriate, and further, that due to this willful conduct, a finding of sanctions is appropriate as set forth below.

BACKGROUND

Defendant removed this case to federal court on May 6, 2022. ECF No. 1. The case then appeared to have settled on August 29, 2022, as Plaintiff and Defendant attended and participated in a settlement conference and the mediator filed a mediation certification. ECF No. 18. Approximately one month later, Defendant filed a Motion for Sanctions against Plaintiff for alleged misrepresentations "including the identity of the real party in interest and the validity of the settlement agreement entered into between Clark" and Defendant. ECF No. 19 at 1. Defendant informed the Court that:

> [A]fter multiple encounters with [Plaintiff], including a deposition and written discovery, and his public adjuster, William Griffin, including multiple site inspections, both of them waited until after a settlement was reached between [Defendant] Ohio Security and [Plaintiff] at the court-ordered mediation to reveal that [Plaintiff] earlier assigned his interest in the claims at issue to a contractor, P&G Construction Consultants, LLC (in which it appears the public adjuster has an ownership interest).

*Id.* at 1-2. In an attempt to resolve this issue, Defendant served a Subpoena for Production of Documents on the third-party contractor, P&G Construction, on October 17, 2022. ECF No. 26 at 1. Defendant then filed a Motion to Compel with the Court on November 18, 2022, on the basis that "P&G ha[d] failed to respond at all to the Subpoena." ECF No. 26 at 2. The Court granted the Motion to Compel, directing P&G to comply with the Subpoena no later than January 9, 2023. ECF No. 33 at 1.

The Court has held multiple telephonic status conferences regarding P&G Construction's continued failure to comply with the Subpoena. On March 7, 2023, the Court ordered Plaintiff to engage in digital forensic analysis of all electronic devices possessed by P&G Construction Consultants or Mr. William Griffin that may contain relevant documents. ECF No. 45. The Court set a deadline of March 28, 2023, to conduct the analysis and provide Defendant with the results. ECF No. 45. The Court held a status conference on March 28, 2023, to hear from the parties

whether the forensic analysis yielded the necessary documentation. Defense counsel represented to the Court that the report provided by Plaintiff still failed to substantively answer the Subpoena served more than five months earlier. Because of P&G Construction's continued failure to respond adequately to the Subpoena, the Court set a contempt hearing for April 10, 2023. Plaintiff's counsel represented to the Court that the following individuals are the principals of P&G Construction: Billy Griffin, William Griffin, and Russ Perkins. The Court ordered these individual principals of P&G Construction to appear before the Court on April 10, 2023, at 2:00 pm for contempt proceedings.

The Magistrate Judge held contempt hearings on April 10, 2023, April 24, 2023, and May 1, 2023. The parties filed post-hearing briefs on May 26, 2023, and June 20, 2023, pursuant to Court Order. ECF No. 58. As Defendant correctly notes in its post-hearing brief, there are two primary issues before the Court at this time. First, whether Plaintiff Michael Clark has standing and/or is the correct party in this case. Second, whether third-party P&G Construction Consultants, LLC ("P&G") and/or members and representatives should be sanctioned and/or held in contempt of court.

<u>Standing/Real Party in Interest</u>

As to the first issue before the Court, Plaintiff testified at the April 24, 2023 hearing that he assigned his claims on October 22, 2020. Hearing Ex. 10 and 11. He gave Mr. Griffin "full authority to take over [his] claim and Plaintiff stated he "was leaving this all up to [Mr. Griffin]." ECF No. 60 at 17:4-10; 20:3-5; 28:18-25. In fact, Plaintiff testified that he thought Mr. Griffin

should have filed this lawsuit instead of Mr. Clark. *Id.* at 35:9-15. The First Assignment of Claim[1]

contains the following language:

> I hereby assign and transfer all interest and insurance claim rights, benefits, any causes of action, damages, appraisals, litigation, and/or settlement of the restoration work and claim under any applicable insurance policies to COMPANY; and I further direct my insurance carrier(s) to release any and all information requested by the COMPANY, its representatives, and/or its Attorney for the direct purpose of obtaining actual benefits to be paid for services rendered or to be rendered. I believe my appropriate insurance carrier to be Liberty Mutual / Ohio Security Insurance.

ECF No. 54-2 at 70:4-10; Hearing Ex. 3; D.E. 19-18. Mr. Clark and Mr. Griffin both testified that this is a full assignment of Mr. Clark's insurance claim to P&G. ECF No. 60 at 17:4-10; 20:3-5; 28:18-25; 116:10-117:2; 118:15-25, Ex. 10. For its part, Defendant does not dispute that this assignment of claim occurred. ECF No. 62 at 10-13. The parties disagree, however, as to what effect this assignment of claims has on Plaintiff Clark's ability to be the plaintiff in this case.

Defendant first argues that there is no standing pursuant to Article III of the Constitution. To satisfy Article III standing requirements, "a plaintiff must show: '(1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* However, as Plaintiff has pointed out, in *Cranpark Inc. v. Rogers Grp. Inc.*, the Sixth Circuit held that a contracting party who transfers or sells his interest in a claim retains Article III standing. *Cranpark Inc.,* 821 F.3d 723, 730-735 (6th Cir. 2016)). There is no question

---

[1] There is a second Assignment of Claim produced via emails dated January 9, 2023, and January 19, 2023. The Second Assignment of Claim contained this same language. Plaintiff testified at the April 24, 2023 contempt hearing that he signed three differing versions of the AoCs, all of which are dated October 22, 2022. Hearing Ex. 11. Under cross-examination, he "absolutely" signed an assignment of claim with P&G regarding this claim. *Id.* at 19:21-25, but he "guess[es]" he signed the Second Alleged AoC, because his name appears on it. *Id.* at 39:11-18; Hearing Ex. 10.

4

here that Plaintiff has Article III standing. He alleges he owned the premises that was allegedly damaged on May 4, 2020, that is the subject of the lawsuit. Plaintiff also alleges that Defendant was the insurer of the property and wrongfully denied wind and hail damage. ECF No. 1, Ex. 1. *See also Alexander v. DLJ Mortg. Cap., Inc.,* No. 3:15-cv-293TSL-RHW, 2016 WL 11613005, at *3, fn 3 (S.D. Miss. July 5, 2016).

In *Cranpark,* the Sixth Circuit noted, however, that while Article III standing may not be implicated, such a contracting party who has completely assigned his contract rights to a third party implicates Rule 17 of the Federal Rules of Civil Procedure's real-party-in-interest requirement. The Sixth Circuit noted that lawyers and courts often fail to distinguish between these two distinct issues. *Id.* at 732. In *Wright v. Linebarger Googan Blair & Sampson, LLP*, the court explained the interplay between the two: "the purpose of the real-party-in-interest principle is to identify the person who possesses the right sought to be enforced … By contrast, the purpose of standing is to determine whether the plaintiff can show an injury in fact traceable to the conduct of the defendant." *Wright*, 782 F. Supp. 2d 593, 614 (W.D. Tenn. 2011) (cleaned up). *See also Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir.2002) (explaining that the real party in interest concept is related to but different from the concept of standing); *Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) ("Frequently, attorneys and courts confuse the concepts of standing with that of capacity to sue and with the real party in interest principle.")

Given the interplay of these two principles, it is no surprise that Defendant's second argument is that Plaintiff is not the real party in interest in this case pursuant to Federal Rule of Civil Procedure 17. Rule 17(a) provides that "(e)very action shall be prosecuted in the name of the real party in interest." The effect of this rule "is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." *Nat'l City Bank of*

*Michigan v. Forthright III, LLC*, No. 08-12540, 2009 WL 236126, at *3 (E.D. Mich. Feb. 2, 2009) citing *Mason–Rust v. Laborers' International Union of North America, AFL–CIO, Local 42*, 435 F.2d 939 (8th Cir. 1980); *U.S. v. 936.71 Acres of Land, More or Less, Situated in Brevard County, State of Florida*, 418 F.2d 551 (5th Cir. 1969); *Boeing Airplane Co. v. Perry*, 322 F.2d 589 (10th Cir .), cert. denied, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1963).

Fed. R. Civ. P. 17(a) makes the assignee of a valid assignment, written or oral, a real party in interest. *See Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 285, 128 S. Ct. 2531, 171 L. Ed. 2d 424 (2008) (an assignee for collection may properly sue on the assigned claim in federal court); *American Soc. for Testing & Materials v. Corrpro Companies, Inc.*, 292 F. Supp. 2d 713, 718 (E.D. Pa. 2003) (if assignment is effective, assignee is the real party in interest and "an action on the assignment must be prosecuted in his name"). Where the assignment is total, the assignee is the only real party in interest and suit must be brought in his name. *CGU Life Ins. Co. of America v. Metropolitan Mortg. & Securities Co., Inc.*, 131 F. Supp. 2d 670, 676, (E.D. Pa. 2001) (where an assignment is effective "the assignee stands in the shoes of the assignor and assumes all of his rights … [t]herefore, the assignee is the real party in interest and an action on the assignment must be prosecuted in his name" (internal citations omitted)).

Defendant proffers a multitude of cases from around the Sixth Circuit that stand for this proposition, including *Liberty Mut. Ins. Co. v. A Staffing Kompany, Inc.*, No. 1:04-cv-209, 2006 WL 335525 (E.D. Tenn. Feb. 14, 2006).  In that case, Liberty Mutual filed suit seeking payment of unpaid premiums. The defendants subsequently filed a motion to dismiss Liberty Mutual's claims, arguing that Liberty was not the real party in interest. The court discussed whether Liberty Mutual had entered into a full or partial assignment, noting that if Liberty completely assigned its rights, the vendor agency assignee would be the real party in interest. *Id.* at 7-8, relying on *Dixie*

6

*Portland Flour Mills, Inc. v. Dixie Feed & Seed Co.,* 382 F.2d 830, 833 (6th Cir. 1967) (explaining "an assignment for purposes of collection" was valid under Tennessee law and the assignee was the sole real party in interest).

Here, as set forth above, the First and Second Alleged Assignments of Claim specifically provide that Plaintiff transferred "all interest and insurance claim rights, benefits, any causes of action, damages, appraisals, litigation, and/or settlement." (Hearing Exs. 1, 3, 10, & 15C.) These documents "clearly provide[] that [Mr. Clark], as assignor, assigned [his] rights in the [insurance claim] to [P&G], as assignee". *See Nat'l City*, 2009 WL 236126 at *4 (involving a similar scope of assignment). Accordingly, Mr. Clark neither reserved rights in the claim, nor retained the right to litigate these completely assigned claims. Moreover, Plaintiff confirmed this complete assignment during the contempt hearing on April 24, 2023, and Plaintiff's counsel acknowledges this complete assignment in Plaintiff's Memorandum Response to Motion for Contempt. ECF No. 63 at 2.

Plaintiff's sole argument in rebuttal is as follows:

> the Defendant did not raise the affirmative defense of capacity either in its answer, DE 8, or within the amended time allotted for amendments, DE 40, thus it is this waived consistent with *Cranpark*. Defendant failed to raise this affirmative defense although it knew of the assignment of the post-loss claim no later than November 30, 2020 via the e-mail sent to Mr. Uvalde. April 24, 2023 Transcript, pp 128-129, 101. Exhibit 16.

ECF No. 63 at 2. Plaintiff's argument is without merit.

In *Cranpark*, the Sixth Circuit noted that the "real-party-in-interest requirement is generally viewed as an affirmative defense that can be waived," and [w]hen raised late in litigation, as in this case, challenges under Rule 17(a) are generally considered waived or forfeited." *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016) (internal citations omitted).

7

In that case, the standing/real-party-in-interest issues appeared to be settled and the defendant "never challenged it at any stage before the close of proofs" at the trial. *Id* at 733.

Here, in stark contrast, Defendant has been faced with a seemingly never-ending uphill battle in trying to ascertain who the real party in interest is in this case. On August 29, 2022, a mediation certification was filed noting that the parties – the current Plaintiff and Defendant - had settled in full. ECF No. 18. About one month later, the Motion for Sanctions that is now before this Court was filed, on September 28, 2022. ECF No. 19. As stated previously, Defendant's Motion details "multiple encounters with [Plaintiff], including a deposition and written discovery, and his public adjuster, William Griffin, including multiple site inspections." *Id.* And yet Plaintiff and Griffin waited until after a settlement was reached between Defendant and Plaintiff at the court-ordered mediation to disavow the settlement, revealing that Plaintiff had earlier assigned his interest in the claims at issue to a contractor, P&G Construction Consultants, LLC (in which it appears the public adjuster has an ownership interest). *Id.* at 1-2. In doing so, Plaintiff "failed to disclose essential documents from Ohio Security relating to the real party in interest, failed to participate in discovery in good faith, and has recently refused to communicate with Ohio Security regarding the validity of Clark's agreement to settle his claims against Ohio Security." *Id.* at 2. Defendant promptly served the alleged real party in interest P&G with a subpoena, on October 17, 2022, which P&G failed to respond to, necessitating the Motion for Sanctions which explained:

> P&G is no normal third-party. P&G revealed itself as the alleged party in interest to this lawsuit after Ohio Security appeared at (and incurred the cost of) at a court ordered mediation and believed it had reached a settlement with Plaintiff Michael Clark ("Plaintiff"). Ohio Security has a presently pending Motion for Sanctions & Order to Show Cause, in which it sought a stay of all proceedings for 90 days so that Ohio Security could conduct discovery to determine the real party in interest to this dispute, sanctions against Plaintiff, including Ohio Security's costs and fees associated with attending the court-ordered mediation, and dismissal of Plaintiff's claims, among other relief. (D.E. 19 – 19-22.) The Court has not yet ruled upon that

8

> Motion. In an effort to engage in discovery regarding P&G's claims that it, not Plaintiff, is the true party-in-interest to this dispute, Ohio Security served the Subpoena on October 17, 2022. P&G has failed to respond at all to the Subpoena.

*Id.* at 1-2. After multiple discovery issues and failures to comply with court orders, the Court held contempt hearings specifically regarding standing as well as who was "the real party in interest to the case." ECF No. 53. It is crystal clear to this Court that Defendant has, at no time, waived this real-party-in-interest argument but to the contrary, has vigorously pursued it despite facing these "hide-the-ball" tactics. It is also clear that *Crankpark*, upon which Plaintiff relies, is inapposite, as the case at hand is not in the late stages of litigation, but very much in the initial stages of discovery.

The Court notes that Rule 17 allows an opportunity to cure. Rule 17 mandates that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed.R.Civ.P. 17(a)(3). *See, e.g., Knight v. New Farmers Nat. Bank*, No. 90-6071, 1991 WL 207056, at *2 (6th Cir. Oct.16, 1991); *Plate v. Johnson*, 339 F. Supp. 3d 759, 768 (N.D. Ohio 2018) (Explaining that under Rule 17(a)(3), federal courts "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action…After ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest."). This rule is "designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." *Fieldturf USA, Inc. v. Astroturf, L.L.C.*, 2015 WL 13047566, *3 (E.D. Mich. 2015) (quoting 6A Wright and Miller, Federal Practice & Procedure § 1555 (3d ed. 2010). A Rule 17(a) substitution of plaintiffs "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the

9

events or the participants." *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F.Supp.2d 593, 615 (W.D. Tenn. 2011) (quoting *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 534 (6th Cir. 2002) (Gilman, J., concurring)).

However, the flip side of the coin is true as well; where an unreasonable amount of time has passed, courts will not allow a Plaintiff to substitute the real party in interest, particularly where a plaintiff's antics and/or lack of diligence prejudice a defendant. *Rodriguez v. Mustang Mfg. Co.* is instructive. *Rodriguez v. Mustang Mfg. Co.*, No. 07-cv-13828, 2008 WL 2605471, at *3–4 (E.D. Mich. June 27, 2008). In that case, two years had passed since the plaintiff had filed his bankruptcy petition and obtained his bankruptcy discharge. The plaintiff did not list his claim as a scheduled asset in the original bankruptcy proceeding, and at no time after his discharge did he seek to reopen his bankruptcy proceeding to assert his claim. The court found that granting the plaintiff time to reopen or substitute the trustee as the prosecuting party would cause months of delay, taking the action well outside the statute of limitations on the original claim. The court explained:

> Though this fact does not constitute a procedural bar to Rodriguez's case, *see* Fed.R.Civ.P. 17(a)(3) ("After ... substitution, the action proceeds as if it had been originally commenced by the real party in interest."), it is unfairly prejudicial to Mustang. Evidence has already been lost or moved during the almost four years since Rodriguez's injury, to the detriment of Mustang's discovery efforts. (See D.'s Mot. at 7-8.) Given Rodriguez's failure to determine the real party in interest despite years of opportunity to do so, and the harm that an additional delay would cause Mustang, the month that has passed since Mustang's Rule 17 objection constitutes a reasonable period to amend the complaint. *See Siler v. Wal-Mart Stores, Inc.*, No. 03-00031, 2005 WL 1185805, at *4 (S.D.Ohio May 17, 2005) (concluding that Rule 17(a)(3) did not merit judicial stay to allow the plaintiff to seek reopening in bankruptcy court, as plaintiff had years after bankruptcy discharge to determine the real party in interest).

*Rodriguez v. Mustang Mfg. Co* at 3.

The court noted that "allowing Rodriguez the opportunity to seek a reopening and substitute the trustee as the real party in interest would contravene the purposes of Rule 17(a)(3)'s reasonable time requirement." *Id.* at 4.

It continued:

> Rule 17(a)(3) is "intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir.2002). Neither of these circumstances are present here. The law of the Sixth Circuit clearly demonstrates that Rodriguez's bankruptcy trustee had the exclusive right to bring the bankruptcy claim. *See, e.g., Van Dresser*, 128 F.3d at 948. Plaintiff's failure to declare the claim during the initial bankruptcy proceeding or to subsequently move to reopen the case is not the result of a reasonable mistake. Under these circumstances, it would be inappropriate to allow Rodriguez more time to amend under Rule 17(a)(3), which is designed to protect defendants from a "subsequent action by the party actually entitled to recover" as much as it is meant to protect plaintiff's claim from dismissal on a procedural technicality. *Zurich*, 297 F.3d at 532. Thus, summary judgment under Rule 17(a) is appropriate: the bankruptcy trustee, and not Rodriguez, is the real party in interest entitled to prosecute this claim and Rodriguez has been given a reasonable time to substitute the trustee as plaintiff in this action.

*Id.* at 4.

Here, an unreasonable amount of time has passed, and allowing the substitution would clearly prejudice Defendant. Testimony at the contempt hearings confirmed that evidence has been moved and lost in this case. More troubling, Defendant has gone to great expense in this case even to just determine the real party in interest, without cooperation from Plaintiff or assignee P&G. Plaintiff cannot argue that a determination of the proper party to sue was difficult, as Plaintiff has known for quite some time, most likely when he fully assigned the claim in October 2020, but at the latest, when he disavowed the mediation he participated in almost one year ago, that he was not the proper party. Nor was this an understandable mistake. Indeed, Plaintiff fully participated in a deposition, written discovery, site inspections and a mediation which appeared to settle the case, before revealing that he had completely assigned the claim in October 2020. Relief under the

11

last sentence of Fed. R. Civ. P. 17(a) will not be allowed where the plaintiff improperly seeks to manipulate the rule for some strategic advantage.[2] *See, e.g, Wright v. Linebarger Googan Blair & Sampson*, LLP, 782 F. Supp. 2d 593, 615 (W.D. Tenn. 2011) (in permitting an opportunity to cure, "the Court considers whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue prejudice to the non-moving party." (citing *Tool-Plas Systems, Inc. v. Camaco, LLC*, 2010 WL 1347686, at *2 (E.D. Mich. 2010))). And, incredibly, Plaintiff here has not even attempted to substitute P&G after Defendant has raised the objection, and after Plaintiff, his attorney, Mr. Griffin, and Defendant all agree that Plaintiff completely assigned his claims to P&G.[3] For all these reasons, the Magistrate Judge recommends that the Court find that Plaintiff is not the real party in interest, that an opportunity to cure is not appropriate in this case, and that the case be dismissed with prejudice.

---

[2] In addition, the doctrine of judicial estoppel would likely bar Plaintiff's claim given his full participation in discovery and mediation after having completely assigned his claims to P&G. "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir.1990). Similar to this case, the *Rodriguez* court found that judicial estoppel barred the plaintiff's claims because "[a]sserting a claim against Mustang is clearly inconsistent with the position Rodriguez took before the bankruptcy court. *Rodriguez v. Mustang Mfg. Co.*, No. 07-cv-13828, 2008 WL 2605471, at *3–4 (E.D. Mich. June 27, 2008).

[3] As the Magistrate Judge has noted in the contempt hearings, it troubles the Court that the same attorney represents both Plaintiff and P&G. While Plaintiff's counsel maintains there is no conflict of interest in this case, the logical conclusion is that Plaintiff relied on his attorney's counsel as far as whether he was the appropriate plaintiff. It is clear given the complete assignment of claims that Plaintiff is not the real party in interest, but that P&G, who has been a largely uncooperative third party, is the real party. P&G, and possibly its counsel, has engaged in bad faith antics in seeking to pursue the suit from the sidelines using Plaintiff as some sort of proxy rather than pursing the claim as the proper plaintiff.

SANCTIONS

In its Motion for an Award of Sanctions (ECF No. 19), Defendant requests various sanctions against Plaintiff. Defendant seeks its costs and fees associated with attending the court-ordered mediation, and dismissal of Plaintiff's claims, among other relief. The Magistrate Judge has held this sanctions request in abeyance. Defendant also filed a Motion to Compel Subpoena Responses and For Sanctions against P&G due to its failure to respond to its subpoena. ECF No. 26. Included in that Motion was a request for "an award of Ohio Security's fees and costs incurred in drafting this Motion, and relief under Fed. R. Civ. P. 45(g), to the extent the Court finds P&G in contempt for "fail[ing] without adequate excuse to obey the [S]ubpoena or an order related to it." Defendant renews its request for various sanctions in its post-contempt hearing brief. ECF No. 62.

Sixth Circuit law is clear that "there is judicial power to punish the failure to comply with a valid subpoena as a contempt of court." *ZMCC Properties LLC*, 2021 WL 1737135 at *1. The Magistrate Judge recognizes Defendant's frustration in its endeavors to resolve this case, which was made particularly complicated due to Plaintiff not being the real party in interest and P&G's failure to be forthcoming. The Magistrate Judge also notes the ongoing, apparent conflict of interest in Mr. Clark and P&G sharing an attorney, which Plaintiff's counsel continues to dispute, as well as Mr. Griffin's bad faith gamesmanship in these proceedings, from the settlement conference to P&G's lack of cooperation in response to the subpoena.

The Magistrate Judge previously ordered P&G Construction Consultants to pay costs incurred by Plaintiff that were associated with the forensic analysis of all electronic devices possessed by P&G Construction Consultants or Mr. William Griffin. ECF No. 45. The Magistrate Judge also finds that P&G Construction and Mr. Griffin failed to fully respond to the subpoena at

13

issue. One glaring example of this failure to respond is the text messaging that Mr. Griffin referenced in his testimony that he had not produced.

Defendant's requested sanction of dismissal is mooted by the Magistrate Judge's above recommendation of dismissal due to Plaintiff not being the real party in interest, should that recommendation be adopted by the District Court Judge. Likewise, Defendant's request that P&G be barred from substituting in as the real party in interest, while well-taken, is moot.

The Magistrate Judge finds P&G in contempt for "fail[ing] without adequate excuse to obey the [S]ubpoena" and recommends that the District Court find that P&G may not maintain a claim (now or in the future) against Defendant Ohio Security related to this dispute due to its bad faith gamesmanship which created unnecessary expense and delay in this case.

As to monetary sanctions, the Magistrate Judge recommends that P&G and Mr. Griffin be ordered to pay the reasonable attorney fees and costs that Defendant incurred in drafting its Motion to Compel and the related contempt hearings. The Magistrate Judge recommends that Defendant's attorneys be ordered to file an affidavit detailing these fees and costs for the Court's review.

Respectfully submitted this 11th day of July, 2023.

<u>s/Jon A. York</u>
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATION MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATION. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**