# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL CLARK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:22-cv-01089 ) |
| LIBERTY MUTUAL INSURANCE COMPANY, | ) (*Removed from the Chester County Circuit Court, Case No. 22-CV-11*) ) ) |
| Defendant. | ) |

## AFFIDAVIT OF BRIAN C. NEAL

STATE OF TENNESSEE  )
COUNTY OF DAVIDSON  )

Pursuant to Fed. R. Civ. P. 54(d)(2), LR 54.1, as well as this Court's Order entered on August 9, 2023 (D.E. 70), the Affiant, Brian C. Neal, being duly sworn upon oath states as follows:

1. I am a member in good standing of the bar of the State of Tennessee and the Commonwealth of Kentucky.

2. I was primarily responsible for defending Defendant Ohio Security Insurance Company, improperly named in the Complaint as Liberty Mutual Insurance Company ("Ohio Security"), in this matter. I also oversaw, supervised, and managed the work performed by Kate A. Hamilton, an associate at Burr & Forman LLP ("Burr & Forman"). Together, Mrs. Hamilton and I provided legal services for Ohio Security in this matter.

3. I respectfully submit my Affidavit in support of Ohio Security's Motion and Memorandum of Law in Its Attorney Fee and Costs Request filed contemporaneously. The following is based upon my personal knowledge, and if called upon to do so, I can and will competently testify thereto.

51489071 v1

**Exhibit A**

**Qualifications, Experience, and Expertise**

4. I was admitted to practice law in the State of Tennessee in 2003 and to the Commonwealth of Kentucky in 2016. I remain in good standing in both jurisdictions. I have been admitted to numerous federal courts, including the Eastern and Western Districts of Kentucky, the Eastern, Middle, and Western Districts of Tennessee, the Northern District of Florida, and the United States Court of Appeals for the Sixth Circuit.

5. I obtained a Bachelor of Arts degree from Birmingham-Southern College in 1998, then I obtained a Master of Science degree from the University of Edinburgh in 1999, after which I obtained my Juris Doctorate degree from the University of Michigan Law School in December 2002. Of note, I have received the following honors:

- *The Best Lawyers in America*®, Commercial Litigation (2016-2023); Insurance Law (2022 & 2023); Personal Injury Litigation – Defendants (2023); and Lawyer of the Year for Insurance Law, Nashville, TN (2023);
- *Mid-South Super Lawyers*®, Business Litigation (2018-2023); and
- *Mid-South Super Lawyers*, Rising Star® (2012-2016).

6. In addition, the associate who performed much of the work on this matter, Mrs. Hamilton, obtained a Bachelor of Arts degree, *summa cum laude*, from Lipscomb University in 2018, then she obtained a Juris Doctorate degree, *cum laude*, from the University of Tennessee College Law in 2021.

7. I am a partner with the law firm of Burr & Forman, and my office is located in Nashville, Tennessee. Burr & Forman is a regional law firm with over 350 attorneys who practice out of 20 offices in eight (8) states. I work in the firm's Commercial Litigation Practice Group, as well as its Torts, Trial & Insurance Practice Group. In my practice, I regularly represent insurers in lawsuits involving allegations of breach of contract, statutory bad faith, and other litigation matters.

8. From my office located in Nashville, I regularly serve as counsel on legal matters in the courts of Western Tennessee, both state and federal, including the following matters on which I served as defense counsel for an insurer in the Western District of Tennessee:

*Third Party Solutions, Inc. et al v. Liberty Northwest Insurance Corporation*, Case No. 2:2006-cv-02499; *Lartdale v. Liberty Mutual Insurance Company*, Case No. 2:2007-cv-02252; *Legacy Homes, LLC v. Indiana Insurance Company*, Case No. 2:2007-cv-02403; *Southern Pioneer Property and Casualty Insurance Company v. Legend Auto Sales, LLC et al.*, Case No. 2:2016-cv-02779; *Autry et al v. Safeco Insurance Company of America*, Case No. 2:2018-cv-02124; *Mrs. Sheela, LLC v. Ohio Security Insurance Company*, Case No. 2:2018-cv-02444; *Lillard et al v. Liberty Insurance Corporation*, Case No. 2:2019-cv-02097; *Gould's Salon, Inc. v. American Fire and Casualty Company et al.*, Case No. 2:2019-cv-02738; *Liberty Insurance Corporation v. Loancare, LLC et al.*, Case No. 2:2019-cv-02739; *Sain et al v. Liberty Insurance Corporation*, Case No. 1:2020-cv-01079; *Landmark American Insurance Company v. Heco Realty, LLC et al.*, Case No. 1:2020-cv-02631 [still pending]; *Clayborn v. Liberty Insurance Corporation*, Case No. 2:2021-cv-02115; *Jones et al v. Liberty Mutual Personal Insurance Company*, Case No. 2:2021-cv-02315; *J&S Welding, Inc. v. Liberty Mutual Insurance Company et al.*, Case No. 1:2022-cv-01122 [still pending]; *Schiller et al v. Liberty Mutual Personal Insurance Company*, Case No. 2:2023-cv-02047 [still pending]; *Hudson v. Liberty Mutual Personal Insurance Company*, Case No. 2:2023-cv-02060 [still pending]; *OnCall HVAC, LLC v. Ohio Security Insurance Company*, Case No. 2:2023-cv-02216 [still pending]; and *Slayton v. Liberty Mutual Personal Insurance Company*, Case No. 2:2023-cv-02254 [still pending.]

9. Burr & Forman charged its client, Ohio Security, the following hourly rates in this lawsuit for the time periods indicated:

April 26, 2022 – December 31, 2022

    Senior Partner: $350.00
    Junior Partner : $310.00
    Senior Associate: $280.00
    Junior Associate: $255.00

January 1, 2023 - Present

    Senior Partner: $380.00
    Junior Partner : $350.00
    Senior Associate: $300.00
    Junior Associate: $275.00

The rate increase effective on January 1, 2023 was applied to all existing and new matters handled by Burr & Forman for Ohio Security, as well related insurance companies owned or operated by Liberty Mutual.

10. At all times in this lawsuit, I was billed at the rate of a Senior Partner, while Kate A. Hamilton was billed at the rate of a Junior Associate. So, my time was billed to Ohio Security at $350.00 an hour in this matter until January 1, 2023 when my rate increased to $380.00. Similarly, Mrs. Hamilton's time billed to this matter was billed at $255.00 an hour until January 1, 2023, when her rate charged on this matter increased to $275.00 an hour.

11. Such hourly rates appear to be consistent with the type of rates charged in Jackson, Tennessee by partners and associates for work of similar complexity. Moreover, all time billed on this matter by Mrs. Hamilton and me was billed in 0.1 hour (tenth of hour) increments.

**Case Summary**

12. I compiled this Affidavit by reviewing: (1) the documents entered into the Court's record to determine the major billable events that took place in this lawsuit after August 29, 2022; and (2) any correspondence and billing related to particular billable events to determine the specific work performed by my office. This section truly and correctly summarizes the major billable events in this case for which Defendant's Counsel seeks recovery of their fees and costs as a sanction against P&G Construction Consultants, LLC ("P&G") and William Griffin ("Mr. Griffin"), along with the work performed by Defendant's Counsel to warrant such an award.

13. As this Court is aware and has determined, what could have been a relatively straightforward breach of insurance action, which: (a) Ohio Security, (b) counsel for both parties, and (c) the mediator, believed was settled very early in the lawsuit at a court-ordered mediation (D.E. 18), turned into something very different, time consuming, more complex, and costly. In

all, it took Ohio Security and the Court nearly one (1) full year to learn whether a settlement had been reached, and who the real party in interest was in this lawsuit due to: (a) "P&G's failure to be forthcoming" regarding who was the real party in interest," (b) [Mr.] "Griffin's bad faith gamesmanship in these proceedings," and (c) "'P&G['s] and Mr. Griffin['s] fail[ure] to fully respond to the [Su]bpoena at issue' among other considerations" (D.E. 70 at PageID (quoting 958 D.E. 66) (internal citations omitted).

14. Most notably, P&G still has not complied with the Subpoena to which this Court ordered P&G to respond in 2022 (D.E. 33) by producing electronically stored information in its possession related to the alleged assignments of claim at issue. Moreover, neither P&G nor Mr. Griffin hired an entity to perform a digital forensics analysis of "all electronic devices possessed by P&G [] or Mr. [] Griffin" as ordered by the Court. (D.E. 44 & 45.) These easily rectified problems persisted so long that Defendant's Counsel was forced to attend not only a valueless mediation with the wrong party plaintiff present, but to endure the cost of attending and preparing for least five (5) telephonic hearings, and what amounted to a three-day bench trial (the Contempt Hearings), where I examined, then cross-examined witnesses, who I had not previously encountered. In addition, P&G and Mr. Griffin's wrongful conduct forced Ohio Security to file numerous briefs, responses, and replies to defend Ohio Security's interests against P&G and Mr. Griffin's wrongful actions.

15. Finally, Defendant's Counsel made reasonable efforts to litigate this case in an efficient manner. Work was divided among Defendant's Counsel to eliminate duplication of efforts, although lead counsel, due to his attendance at the court-ordered mediation and in conversations with both counsel for Plaintiff, P&G and Mr. Griffin, attended all early hearings and presented much of the information due to his knowledge of events.

16. Work was also performed efficiently within Burr & Forman. I managed this case and personally oversaw and supervised the work performed by Mrs. Hamilton and the considerable, unbilled time devoted to this matter by staff members who worked on this case. Generally speaking, legal theories, model pleadings, and litigation strategies were developed by me as the handling partner and then circulated to Mrs. Hamilton for adaption or further development.

17. I attempted to handle the Contempt Hearings alone to reduce the total costs, but on the second day of the hearings Mrs. Hamilton accompanied me to present anticipated arguments and motions, so that I could devote more time to the examination of the important witnesses expected to be called that day. Mrs. Hamilton devoted substantial time to drafting various motions and filings relevant to the Court's sanctions award against P&G and Mr. Griffin and presented arguments regarding the admissibility of Mr. Struttman's expert testimony.

**Motion Practice After August 29, 2022**

**Sept. 28, 2022, Motion for Sanctions and Order to Show Cause Against Plaintiff. (D.E. 19, 21, 33, 36, 39).**

18. After counsel for Ohio Security and then-counsel for Plaintiff Michael Clark ("Mr. Clark"), Toby Gammill, reached a settlement at the court-ordered mediation conducted by Allen Blair on August 26, 2022 (D.E. 18 & 19-6), Defendant's Counsel reached out to William Griffin for his W-9 to receive payment for his work as a public adjuster. At that time, Mr. Griffin advised via email that he (or P&G) was the "legal assignee who is the real party of interest". (Hearing Ex. 12). Then, on September 6, 2022, P&G reached out via email advising Mr. Clark he "was in breach of the terms of our [Assignment of Claim] that was executed in October 2020." (D.E. 19-11). These actions of P&G and Mr. Griffin caused Ohio Security to be uncertain as to who was the real party in interest in this lawsuit, to seek proof regarding the belated claims of P&G and Mr.

Griffin, and ultimately to file a Motion for Sanctions and Order to Show Cause against Mr. Clark to the extent P&G and Mr. Griffin's claims were true.

19. Mr. Clark filed a Response to the Motion for Sanctions (D.E. 21), which did not dispute Ohio Security's representations regarding the court-ordered mediation. The Court conducted a telephonic hearing on December 16, 2021, at which counsel for Ohio Security appeared. (D.E. 33). While granting other motions, the Court did not rule upon the Motion for Sanctions filed against Mr. Clark at that time, although it orderED Mr. Clark to retain new counsel on or before January 16, 2023 (after allowing Mr. Gammill to withdraw), which led to issuance of a subsequent Show Cause order against Mr. Clark on January 23, 2023, and yet another hearing. (D.E. 36).

20. Thereafter, at the show cause hearing on February 6, 2023, the Court ordered Mr. Clark to participate in a second deposition, but otherwise held the Motion for Sanctions under advisement. (D.E. 19 & 39).

21. Ohio Security had to prepare and file the Motion for Sanctions, review Plaintiff's Response, appear at multiple hearings thereafter, and research case law addressing the unique issues presented. Moreover, Ohio Security was forced to depose Plaintiff a second time regarding this issue on March 24, 2023.

22. While P&G and Mr. Griffin may complain about the imposition of fees against them related to the actions or omissions of Mr. Clark, Mr. Clark testified that he believed Mr. Griffin should have filed this lawsuit instead of Mr. Clark, and that Mr. Clark "was leaving this all up to [Mr. Griffin]." (D.E. 60 at 17:4-10; 20:3-5; 28:18-25; 35:9-15). Thus, as Defendant's Counsel, based upon the proof presented at the Contempt Hearings, I aver that P&G and Mr.

Griffin's actions and omissions caused the Court and Ohio Security to engage in this motion practice, and P&G and Mr. Griffin should be held responsible.

23. Defendant's Counsel seek an award of a total of 58.2 hours, which equals $17,253.00 in fees incurred regarding the work necessarily related to the Motion for Sanctions (D.E. 19) and relevant proceedings thereafter. The time is divided between 22.4 hours for Mr. Neal and 35.8 hours for Mrs. Hamilton. Counsel recorded their work hours in an accurate and contemporaneous fashion. A true and correct summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 1**.

**Plaintiff's Original Counsel's Motion to Withdraw as Attorney and Motions for Status Conference (D.E. 22, 23, 33. 36).**

24. Due to Plaintiff's failure to honor the settlement agreement and the interference with such agreement by P&G and Mr. Griffin, the original attorney for Plaintiff, Mr. Gammill, requested to withdraw from this matter. (D.E. 24). In addition, Mr. Gammill filed Motions for Status Conference to discuss his pending Motion to Withdraw (D.E. 22 and 23), at which Defendant's Counsel appeared.

25. Among other reasons, it appears Mr. Gammill sought to withdraw from this matter because P&G and/or Mr. Griffin claimed after the court-ordered mediation to be the real party in interest, P&G and Mr. Griffin interfered with the settlement reached at the mediation, and P&G threatened to sue Mr. Clark, some or all of which combined to lead Mr. Clark to refuse to execute the settlement and release agreement. (D.E. 19-15).

26. Defendant's Counsel seeks an award of a total of 6.2 hours, which equals $2,164.00 in fees incurred regarding the work and hearing attendance necessarily related to the Motion to Withdraw (D.E. 22 & 23) and relevant proceedings thereafter. The time is divided between 5.6 hours for Mr. Neal and 0.6 hours for Mrs. Hamilton. Counsel recorded their work hours in an

accurate and contemporaneous fashion. A true and correct summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 2**.

**Motion to Compel Subpoena Responses & Sanctions (D.E. 26, 29, 30, 33, 42, 43, 44, 45, 46, 47).**

27. Based on the above, on October 4, 2022, Ohio Security issued a subpoena to P&G requesting, "…all records related to Michael Clark's signature of an assignment of claim related to Michael Clark and/or the Property [defined therein], any electronically stored information and/or digital data", among other things ("the Subpoena"). (D.E. 26-1; Hearing Ex. 15C). P&G did not timely respond to the Subpoena after service of process.

28. After service of a letter advising P&G that its response to the Subpoena was overdue (D.E. 26-2), to which P&G did not respond, Ohio Security filed a Motion to Compel Subpoena Responses and for Sanctions (D.E. 26 – D.E. 30-1), which the Court granted on December 16, 2022, although the sanctions request was held in abeyance. (D.E. 33). P&G filed a Response (D.E. 29) to this Motion to Compel Subpoena Responses and for Sanctions, to which Ohio Security obtained leave to file a Reply in order to defend Ohio Security's interests, which was filed on December 8, 2022. (D.E. 30, 32). Such work was necessary due to P&G's belated claim to be the real party in interest, and its complete refusal to respond to the Subpoena.

29. Thereafter, via emails dated January 9, 2023 and January 19, 2023, P&G's counsel belatedly produced another alleged assignment of claim (most easily distinguished from the initially shared AoC by a color logo at the bottom and a different address). (Hearings Ex. 1; 3; 10, 15C).

30. However, P&G did not produce "any electronically stored information and/or digital data" related to either of the versions of the assignment of claims produced, even though the December 16, 2022 Order required P&G "to comply with the [S]ubpoena" without limitation.

(D.E. 33.) Afterward, the following hearings occurred, which involved P&G's failure to respond to the Subpoena, and all of which were attended by Defense Counsel:

- February 6, 2023 – During the status conference, where the Court learned Mr. Clark selected Mr. Berkley to appear on his behalf, Ohio Security discussed remaining issues with P&G's production with the Subpoena. The Court noted the Motion for Sanctions was still under advisement and set a status conference for 15 days later to allow P&G to produce electronically stored information and digital data related to the AoCs and Mr. Clark. (D.E. 39).
- February 21, 2023 – During the status conference, P&G's counsel revealed nothing further had been produced and claimed to be awaiting a box of materials from Mr. Clark's prior counsel, Toby Gammill. As a result, a follow-up hearing was set for March 7, 2023. (D.E. 42).
- March 7, 2023 – During the status conference, counsel for P&G revealed nothing further had been produced pursuant to the Subpoena, so the Court ordered: "Plaintiff to engage in digital forensic analysis of all electronic devices possessed by P&G Construction Consultants or Mr. William Griffin that may contain relevant documents." The Court gave them until March 28 comply and ordered P&G to pay costs associated with the forensic analysis." (D.E. 44 & 45.)
- March 28, 2023 – During the status conference, Ohio Security's counsel revealed a one-page report from Micro Computer Center ("MCC") had been produced by P&G (Hearing Ex. 4), but nothing else. The Court ordered the Contempt Hearing, which began on April 10, 2023. (D.E. 46 & 47.)

31. As seen in the above, despite numerous attempts to confer and multiple Court hearings, in addition to Court orders, P&G and Mr. Griffin simply refused to comply with the Subpoena, the Court's Order to produce electronically stored information (D.E. 33), or to hire a party to conduct a digital forensics analysis of all electronic devices possess by P&G and Mr. Griffin (D.E. 44 & 45). This hardball strategy resulted in delays, motion practice, and a number of hearings through no fault of Ohio Security.

32. Defendant's Counsel seek an award of a total of 55.0 hours, which equals $17,203.00 in fees incurred regarding the work necessarily related to the Motion for Sanctions (D.E. 26, 30) and relevant proceedings thereafter related to P&G's refusal to respond to the Subpoena. The time is divided between 28.0 hours for Mr. Neal and 27.0 hours for Mrs. Hamilton. Counsel recorded their work hours in an accurate and contemporaneous fashion. A true and correct

summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 3**.

**3-Day Contempt Hearing and Witness and Examination Preparation for Same**

33. Based on P&G and Mr. Griffin's refusal to comply with the Court's various orders regarding the Motion for Sanctions, the Court ordered a contempt hearing related to Ohio Security's Motion to Compel Subpoena Responses and for Sanctions (D.E. 26, 46, 47). The Court conducted the Contempt Hearings during the afternoons of the following dates: April 10; April 24; and May 1 ("the Contempt Hearings").

34. During the course of Contempt Hearings Defendant's counsel conducted live examinations of the following six (6) fact witnesses (only one (1) of whom it had previously deposed):

- April 10 – Billie Griffin (Owner of P&G), Russell Scott Perkins (Managing Partner of P&G);
- April 24 – Michael Clark, William Griffin; and
- May 1 – Rasoul Mehidian and Bruce Ector of Micro Computer Systems. (D.E. 54-2, 60, 61).

35. In addition to the above, Ohio Security presented relevant computer forensics expert testimony and proof from Trent Struttman of Cyber Agents, Inc., on both April 24 and May 1. Mr. Struttman was admitted as a digital forensics expert over the objection of opposing counsel. (D.E. 54-2 at 102: 23 – 103:8; D.E. 61 at 20:24 – 21: 5).

36. Defendant's Counsel was forced to reach out to Mr. Struttman for assistance, in large part, because it was clear from the submitted Micro Computer Systems' report that P&G had not engaged a third-party to conduct a "digital forensic analysis of all electronic devices possessed by P&G Construction Consultants or Mr. William Griffin that may contain relevant documents" as ordered by the Court. (D.E. 44 & 45).

37. When Ohio Security advised P&G it planned to present the testimony of Trent Struttman at the Contempt Hearings, Plaintiff filed two (2) meritless Motions to Exclude Testimony of Mr. Struttman (D.E. 48 & 54), to which Ohio Security responded with its own Motion Requesting that Additional Expert Testimony be permitted. (D.E. 55).

38. Ohio Security was successful on all fronts. Mr. Struttman was admitted as a digital forensics expert, while both Mr. Mehidian and Mr. Ector of Micro Computer Systems were excluded from offering expert testimony. (D.E. 61 at 38:12-53-7; 84:6-85:14). Moreover, the Court denied P&G's Motion in Limine seeking to exclude the testimony of Mr. Struttman. (D.E. 65).

39. Indeed, the testimony of Mr. Mehidian and Bruce Ector revealed more fully that P&G had not complied with the Court's March 7, 2023 Order that a "forensic analysis of all electronic devices possessed by P&G Construction Consultants or Mr. William Griffin" be conducted. (D.E. 44 & 45; D.E. 61 at 39:16-49:6; 71:16-84:2).

40. Further, during the course of the Contempt Hearings, many exhibits were entered into evidence by Defendant's Counsel and opposing counsel and transcripts of the proceedings were created and paid for by Ohio Security to prepare for future hearings and the Court's order for filing of a Post-Contempt Hearing Brief. (D.E. 58).

41. In addition, Defendant's Counsel held calls with their client to discuss their strategy and plan for the Contempt Hearings. These discussions generally involved the work that was required while at such Hearings and to prepare for various, anticipated arguments from P&G and Mr. Griffin.

42. Defendant's Counsel seek an award of a total of 104.7 hours, which equals $33,530.00 in fees incurred regarding the work necessarily related to the 3-days of Contempt Hearings, and motion practice devoted to Mr. Struttman's testimony, all of which related to P&G's

refusal to respond to the Subpoena. The time is divided between 77.5 hours for Mr. Neal and 27.2 hours for Mrs. Hamilton. Counsel recorded their work hours in an accurate and contemporaneous fashion. A true and correct summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 4**.

**Briefing Following Three-Day Contempt Hearing as Ordered by Court**

43. At the conclusion of the third day of Contempt Hearings, the court ordered Ohio Security to file a brief with 28 days, and also gave Ohio Security 7 days to file a Reply to any response filed by Plaintiff. (D.E. 58.)

44. Ohio Security filed its initial Post-Contempt Hearing brief timely on May 26, 2023. (D.E. 62.) Plaintiff untimely filed a Response to Motion for Contempt on June 20, 2023, in which it raised several unsupported positions and even advanced an unsupported claim of fraud. (D.E. 63).

45. Thereafter, in response, Ohio Security filed a Post-Contempt Hearing Reply Brief on June 26, 2023. (D.E. 64).

46. All work by Defendant's Counsel set forth above was tied to the Court's request for briefs following the Contempt Hearings and/or related to P&G and Mr. Griffin's meritless Response, which necessitated a Reply. (D.E. 64).

47. In addition, Ohio Security paid to secure transcripts regarding all three (3) days of the Contempt Hearings to allow it to properly prepare the Post-Contempt Hearing Brief and Reply Brief.

48. Defendant's Counsel seek an award of a total of 52.0 hours, which equals $19,088.00 in fees incurred regarding the work necessarily related to the Post-Contempt Hearing briefing practice. The time is divided between 45.6 hours for Mr. Neal and 6.4 hours for Mrs.

Hamilton. Counsel recorded their work hours in an accurate and contemporaneous fashion. A true and correct summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 5**.

**Briefing Related to Opposition's Objection to Magistrate Judge York's Report & Recommendation**

49. On July 11, 2023, Magistrate Judge York issued his Report and Recommendation, in which, among other things, he found P&G and William Griffin in contempt and ordered both of them to pay Ohio Security's attorneys' fees and costs incurred in drafting the Motion to Compel and the related contempt hearings. (D.E. 66, p. 14.) Inarguably, this meant Ohio Security had prevailed on its Motion for Sanctions and as a result of the Contempt Hearings.

50. However, Mr. Clark, P&G, and Mr. Griffin took umbrage with the ruling and filed an Objection to Report and Recommendation (D.E. 68). This necessitated the filing of a Response to Plaintiff's Objection by Defendant's Counsel in order to preserve Ohio Security's arguments and reinforce the correctness of Magistrate Judge York's rulings. (D.E. 69). Ultimately, in all relevant parts, the District Court adopted the report and recommendation, most specifically, the Court (a) adopted "the Report's recommendation of monetary sanctions against P&G and [Mr.] Griffin" and (b) ordered Defendant's Counsel "to file an affidavit in the next fourteen days detailing the fees and costs incurred since the August 29, 2022, settlement conference for the Court's review." (D.E. 70).

51. Defendant's Counsel seeks an award of a total of 12.4 hours, which equals $3,893.00 in fees incurred regarding the work necessarily related to Response to the opposition's Objection to Report and Recommendation. The time is divided between 4.6 hours for Mr. Neal and 7.8 hours for Mrs. Hamilton. Counsel recorded their work hours in an accurate and

contemporaneous fashion. A true and correct summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 6**.

**Briefing Related to Attorneys' Fees**

52. Following entry of the Court's Order and Judgment (D.E. 70, 71), Defendant's Counsel began the laborious task of reviewing all time billed to Ohio Security in this matter over that past 12 months, revising the bills to include billing entries relevant to the sanctionable conduct of Mr. Griffin and P&G, then reducing such billing entries further for arguable inefficiencies between counsel or otherwise with regard to the amount of time expended, preparing this Affidavit, the Affidavit's exhibits, the Motion and Memorandum in support, and locating a suitable affiant to supply the fee affidavit required under LR 54.1, as well as gathering all costs related to same.

53. Defendant's Counsel seek an award of a total of 14.4 hours, which equals $5,451.00 in fees incurred regarding the work necessarily related to its request for an award of the attorneys' fees and costs incurred in this matter since August 29, 2022 and presentation of same to the Court. The time is divided between 14.2 hours for Mr. Neal and 0.2 hours for Mrs. Hamilton. Counsel recorded their work hours in an accurate and contemporaneous fashion. A true and correct summary of the reasonable and necessary fees incurred by Defendant's Counsel regarding this work is attached as **Exhibit 7**.

**Appropriate Billing Judgment**

54. The cumulative lodestar of Defendant's Counsel work on this matter between August 29, 2022, and August 22, 2023 is $122,800.00. However, that is **not** the amount being sought in this Motion. Defendant's Counsel seeks recovery for only approximately 80% of this amount, or $98,582.00. *See* Exhibits 1-7. This reduction of ***$24,218.00, or approximately 20% of Defendant's Counsel's total lodestar,*** is the result of the exercise of billing judgment by me.

55. Specifically, in connection with filing this Motion, I applied billing judgment and attempted to lessen the workload for the Court by voluntarily omitting entries from the total amount of attorneys' fees being sought in this Motion.

56. In the exercise of billing judgment, I reviewed and edited Burr & Forman's billing records on an entry-by-entry basis to eliminate inefficiencies and other billing entries that should not be claimed.

57. To the extent that particular time entries by me or Mrs. Hamilton reflect arguably unproductive or duplicative hours, we have not requested fees based thereon. In this matter I made the following exercise of billing judgment in which I either excluded or reduced particular time entries.

58. First, I have excluded time entries that I concluded to be non-billable, or other entries that were excessive, clerical or otherwise non-compensable. Additionally, I excluded time billed by attorneys if such work was duplicative of others' work and if it was not ultimately used. In this regard, there was considerable work performed to prepare for other dispositive motions that ended up not being filed due what occurred at the Contempt Hearings and the rulings thereafter.

59. During my review of this firm's billing records, I also searched for information protected by either the attorney/client privilege, the right to privacy or as privileged work product and omitted client names, specific topics discussed, or specific research performed.

60. I also redacted the contents of privileged communications with our client and communications between counsel.

61. The foregoing exercises of billing judgment reduced Burr & Forman's lodestar by $24,218.00.

62. After all of the above deductions were voluntarily made by Defendant's Counsel, the remaining lodestar for Defendant's Counsel for their work on this case is $98,582.00, which is the amount being sought as a sanction against P&G and Mr. Griffin.

**Costs and Expenses**

63. In addition to the above, my office and Ohio Security incurred costs directly related to P&G and Mr. Griffin's sanctionable conduct.

64. In this regard, Defendant's Counsel seek an award of $7,382.68 in costs incurred due to P&G and Mr. Griffin's sanctionable conduct. The costs are broken down by entry. A true and correct summary of the reasonable and necessary costs and expenses incurred by Defendant's Counsel regarding this work is attached as **Exhibit 8**.

65. Exhibit 8 does not include other costs, including the cost of removal, transcript costs of Plaintiff's first deposition, or the costs associated with the court-ordered August 2022 mediation with Allen Blair, which Ohio Security will seek from Mr. Clark via a filed Bill of Costs, in accordance with LR 54.1(a), since Ohio Security is the prevailing party.

**Summary Of Application For Fees, Costs, And Expenses**

**AUTHENTICATING EXHIBITS ATTACHED TO INDEX OF EVIDENCE**

66. True and correct copies of the following exhibits are attached to this Affidavit:

**Exhibit 1:** – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work on the Sept. 28, 2022, Motion for Sanctions and Order to Show Cause Against Plaintiff;

**Exhibit 2:** – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work on Plaintiff's Original Counsel's Motion to Withdraw as Attorney and Motions for Status Conference;

**Exhibit 3:** – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work on Motion to Compel Subpoena Responses & Sanctions;

**Exhibit 4**: – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work to Prepare for, Conduct and Attend the 3-Day Contempt Hearing and Witness and Examination Preparation Related to Same;

**Exhibit 5**: – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work on Court-Ordered Briefing Following Three-Day Contempt Hearing;

**Exhibit 6**: – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work Caused by the Opposition's Objection to Magistrate Judge York's Report & Recommendation;

**Exhibit 7**: – Defendant's Counsel's Billings, in Chronological Order, After Exercise of Billing Discretion for Time Period of August 29, 2022 to Present, Necessarily Related to Ohio Security's Work to Prepare its Demand for Attorney's Fees and Otherwise Comply with LR 54(b) and this Court's Order; and

**Exhibit 8**: – Defendant's Counsel's Total Costs Requested as a Result of the Sanctions Award.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and is based upon my personal knowledge.

FURTHER THE AFFIANT SAYS NOT

_____
BRIAN C. NEAL (BPR No. 022532)

Sworn to and subscribed before me this 23rd day of August, 2023.

_Angela K. Beasley_
Notary Public
My Commission Expires: 3-3-25

[Notary Seal: ANGELA K. BEASLEY, STATE OF TENNESSEE NOTARY PUBLIC, DAVIDSON COUNTY]